UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

CONSTANTINE MORRISON,

                Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____



**DECISION AND ORDER**

1:18-CV-00492 EAW

## INTRODUCTION

Represented by counsel, Plaintiff Constantine Morrison ("Plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 12; Dkt. 15). For the reasons discussed below, Plaintiff's motion (Dkt. 12) is granted in part, the Commissioner's motion (Dkt. 15) is denied, and the matter is remanded for further administrative proceedings consistent with this Decision and Order.

## BACKGROUND

Plaintiff filed her application for DIB on October 10, 2014, and filed her application for SSI on October 15, 2014. (Dkt. 10 at 15).[1] In her applications, Plaintiff alleged disability beginning November 15, 2013, due to back pain. (*Id.* at 215, 219). Plaintiff's applications were initially denied on December 31, 2014. (*Id.* at 123-34). At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") Lynette Gohr on November 16, 2016, in Buffalo, New York. (*Id.* at 55-98, 135-36). On February 13, 2017, the ALJ issued an unfavorable decision. (*Id.* at 12-35). Plaintiff requested Appeals Council review; her request was denied on February 28, 2018, making the ALJ's determination the Commissioner's final decision. (*Id.* at 6-11). This action followed.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept

---

[1] When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II. Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a

finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* §§ 404.1520(d), 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*id.* §§ 404.1509, 416.909), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* §§ 404.1520(e), 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id.* §§ 404.1520(f), 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* §§ 404.1520(g), 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

# DISCUSSION

## I. The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. §§ 404.1520 and 416.920. Initially, the ALJ determined that Plaintiff met the insured status requirements of the Act through March 31, 2019. (Dkt. 10 at 17). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since November 15, 2013, the alleged onset date. (*Id.*).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of "asthma, degenerative disc disease and disc herniation of the lower back status post-surgery, cervical and thoracic degenerative disc disease, bilateral carpal tunnel syndrome and affective disorder." (*Id.*).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.*). The ALJ particularly considered the criteria of Listings 1.02B, 1.04, 3.02, 3.03, 11.00 *et seq.*, and 12.04 in reaching her conclusion. (*Id.* at 26-27).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with the additional limitations that Plaintiff:

> Could occasionally stoop, kneel, crouch and crawl. [Plaintiff] further must avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity, dust, odors, fumes and other pulmonary irritants. She is limited to performing simple routine tasks, simple work related decisions and minimal changes in work routines and processes. Finally [Plaintiff] could perform frequent, but not constant fine and gross manipulation with the bilateral upper extremities.

(*Id.* at 20). At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (*Id.* at 27).

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of mail clerk, fitting room attendant, and photocopying machine operator. (*Id.* at 28). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act at any time from the alleged onset date through the date of the ALJ's decision. (*Id.* at 29).

## II. Remand of this Matter for Further Proceedings is Required

Plaintiff asks the Court to reverse or, in the alterative, remand this matter to the Commissioner, arguing that: (1) the ALJ failed to properly weigh the mental health opinion evidence of record; and (2) the ALJ's finding that Plaintiff could perform work at the light exertional level was unsupported by substantial evidence of record. (Dkt. 12-1 at 20-29). For the reasons discussed below, the Court agrees with Plaintiff that the ALJ did not properly assess the mental health evidence of record and that this error requires remand.

### A. Assessment of Mental Health Opinion Evidence

The record in this case contains mental health assessments from consultative examiner Dr. Janine Ippolito and from treating nurse practitioner ("NP") Elizabeth Ostrom, among others. Plaintiff contends that the ALJ's decision to give "substantial weight" to Dr. Ippolito's opinion while giving only "little weight" to NP Ostrom's opinion failed to

comport with the applicable regulations and was unsupported by substantial evidence.

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). In reaching her determination, an ALJ must consider and weigh the various medical opinions of record. Pursuant to the Commissioner's regulations:

> [T]he ALJ must consider various factors in deciding how much weight to give to any medical opinion in the record, regardless of its source, including: (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the . . . physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.

*Pike v. Colvin*, No. 14-CV-159-JTC, 2015 WL 1280484, at *5 (W.D.N.Y. Mar. 20, 2015) (quotation and alterations omitted). "An ALJ does not have to explicitly walk through these factors," so long as the Court can conclude that he or she "applied the substance" of the regulations and appropriately set forth the rationale for the weight given to the opinions. *Hall v. Colvin*, 37 F. Supp. 3d 614, 625 (W.D.N.Y. 2014) (quoting *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004)); *see also Thomas v. Berryhill*, 337 F. Supp. 3d 235, 244 (W.D.N.Y. 2018) ("What is required is that the ALJ explain the bases for his findings with sufficient specificity to permit meaningful review.").

"An ALJ may also use evidence from other sources, such as a therapist, to evaluate the severity of a claimant's impairment and the impairment's impact on a claimant's ability to work." *Williams v. Colvin*, No. 15-CV-6136, 2016 WL 5468336, at *10 (W.D.N.Y.

Sept. 28, 2016) (quotation omitted). "[A]n ALJ should apply the same factors to analyze the opinion of a non-acceptable medical source as would be used to analyze the opinion of an acceptable medical source." *Merritt v. Comm'r of Soc. Sec.*, No. 15-CV-6633-CJS, 2016 WL 6246436, at *7 (W.D.N.Y. Oct. 26, 2016) (quotation omitted).

Because nurse practitioners are not acceptable medical sources pursuant to the Regulations, their opinions are generally not entitled to any special weight. *See Taylor v. Colvin*, No. 14-cv-0928 (GTS), 2016 WL 1049000, at *5 (N.D.N.Y. Mar. 11, 2016) ("[A]n opinion from a nurse practitioner is not a medical opinion that is entitled to any particular weight under the regulations."). However, "although a nurse practitioner's opinion is not entitled to the same weight as a treating physician, these opinions are entitled to some extra consideration, when the nurse practitioner has a treating relationship with the patient." *Beckers v. Colvin*, 38 F. Supp. 3d 362, 371 (W.D.N.Y. 2014) (quotation omitted).

In this case, NP Ostrom completed a "Medical Treating Source Statement" related to Plaintiff on November 14, 2016. (Dkt. 10 at 869-71). NP Ostrom rated Plaintiff "poor" in the following mental abilities: ability to maintain regular attendance and be punctual within customary tolerances; ability to work in coordination or proximity without being unduly distracted by them; and the ability to complete a normal workday or workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (*Id.*). In all other areas of mental functioning, NP Ostrom rated Plaintiff as either "fair" or "good." (*Id.*).

The ALJ provided only a cursory evaluation of NP Ostrom's opinion in her written determination. The ALJ initially noted that NP Ostrom was not an acceptable medical

source. (Dkt. 10 at 25). The ALJ then stated, without any additional elaboration, that NP Ostrom's conclusions were "inconsistent with the record as whole, which notes the performance of significant activities of daily living and socialization with family and friends." (*Id.*).

The Court agrees with Plaintiff that the ALJ did not properly consider the applicable factors in assessing NP Ostrom's opinion, and that this error warrants remand. First, the mere fact that NP Ostrom is not an acceptable medical source is not a reason to discount her conclusions. *See Wahler v. Colvin*, No. 1:11-CV-1096 MAT, 2014 WL 6390320, at *10 (W.D.N.Y. Nov. 17, 2014) (collecting cases). To the contrary, as previously noted, the fact that she had an ongoing treating relationship with Plaintiff means that the ALJ should have given her assessment careful consideration.

Second, the ALJ's conclusory statement that NP Ostrom's opinion was inconsistent with the record as a whole does not satisfy the requirement that the ALJ set forth her rationale for the weight afforded to the opinions of record. In particular, the ALJ made no effort to explain why the fact that Plaintiff was able to engage in "significant" activities of daily living and socialize with her family and friends undercuts NP Ostrom's conclusions regarding her ability to maintain punctuality and attendance and to perform consistently in a work environment. *See Meyers v. Colvin*, No. 12-CV-228 (DNH/VEB), 2013 WL 12224212, at *8 (N.D.N.Y. May 14, 2013), *report and recommendation adopted*, WL 12224204 (N.D.N.Y. Sept. 19, 2013) ("[I]t was error for the ALJ to infer an ability to perform the demands of competitive, remunerative employment on a sustained basis from the ability to perform very basic activities of daily living."). The ALJ's failure to

appropriately assess NP Ostrom's opinion "frustrates meaningful review because it hinders the court's ability to determine whether the ALJ's decision is supported by substantial evidence." *Nolan v. Comm'r of Soc. Sec.*, No. 1:17-CV-1190 (WBC), 2019 WL 342413, at *4 (W.D.N.Y. Jan. 28, 2019) (collecting cases remanding for failure to appropriately weigh and consider the opinions of record).

Defendant argues that NP Ostrom's opinion was inconsistent with her treatment notes and the other medical evidence of record. (Dkt. 15-1 at 25-26). However, the ALJ did not reach this conclusion or discuss the consistency of NP Ostrom's opinion with her treatment notes at all, and such *post hoc* explanations for the ALJ's determination "are not entitled to weight by a reviewing court." *Callahan v. Colvin*, No. 6:14-CV-06553 MAT, 2015 WL 5712334, at *4 (W.D.N.Y. Sept. 29, 2015) (quoting *Hill v. Astrue*, No. 1:11–CV–0505(MAT), 2013 WL 5472036, at *7 (W.D.N.Y. Sept. 30, 2013)).

The Court further agrees with Plaintiff that the ALJ failed to appropriately explain the weight given to Dr. Ippolito's opinion. The ALJ merely stated that Dr. Ippolito was "familiar with Social Security's rules and regulations regarding mental impairments and disability," that she "conducted a thorough mental status examination," and that her conclusions were "consistent with the record as whole, which notes the performance of a wide range of activities of daily living and socialization." (Dkt. 10 at 26). A conclusory assertion that a consultative examiner's opinion is consistent with the record as a whole is not a sufficient explanation for crediting that opinion in the absence of "specific references to other evidence lending credence to the non-treating opinion." *Fratello v. Colvin*, No. 13-CV-4339 (VSB)(JLC), 2014 WL 4207590, at *13 (S.D.N.Y. Aug. 20, 2014), *report*

*and recommendation adopted sub nom. Fratello v. Comm'r of Soc. Sec.*, 2014 WL 5091949 (S.D.N.Y. Oct. 9, 2014). Moreover, the absence of an appropriate explanation for the weight given to the medical opinions of record "renders the ALJ's relative weighing of the medical opinions error as a matter of law, and it should be corrected on remand to the Commissioner." *Id.*

For all these reasons, the Court agrees with Plaintiff that the ALJ in this case did not perform an appropriate assessment of the mental health opinions of record, and that this error warrants remand.

### B. Plaintiff's Remaining Argument

As set forth above, Plaintiff has identified an additional reason why she contends the ALJ's findings in this case were unsupported by substantial evidence. However, because the Court has already determined, for the reasons previously discussed, that remand of this matter for further administrative proceedings is necessary, the Court declines to reach these issues. *See, e.g., Bell v. Colvin*, No. 5:15-CV-01160 (LEK), 2016 WL 7017395, at *10 (N.D.N.Y. Dec. 1, 2016) (declining to reach arguments "devoted to the question whether substantial evidence supports various determinations made by [the] ALJ" where the court had already determined remand was warranted); *Morales v. Colvin*, No. 13 CIV. 06844 LGS DF, 2015 WL 2137776, at *28 (S.D.N.Y. May 4, 2015) (the court need not reach additional arguments regarding the ALJ's factual determinations "given that the ALJ's analysis may change on these points upon remand").

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. 12) is granted to the extent that the matter is remanded for further administrative proceedings. Defendant's motion for judgment on the pleadings (Dkt. 15) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated: September 5, 2019
 Rochester, New York